### STATE of Maine WATER IMPROVEMENT COMMISSION

v.

### Gardner MORRILL.

Supreme Judicial Court of Maine.

July 12, 1967.

James S. Erwin, Atty. Gen., Phillip M. Kilmister and Richard Cohen, Asst. Attys. Gen., Augusta, for plaintiff.

Neil D. MacKerron, Bridgton, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WEATHERBEE, Justice.

On appeal. This matter involves the application of the provisions of 38 M.R.S.A. Chapter 3, which is known as the Water Improvement Law, and is the initial consideration of Chapter 3 by this Court.

The plaintiff alleges that the defendant is the owner and proprietor of the Morrill Block in Harrison and that the discharge of waste from the various business establishments located in this Block empties directly, untreated, into a small brook which has received the statutory classification of B–1.

Early in August, 1966, three representatives of the Water Improvement Commission inserted bright colored tracer materials into the laundromat and some of the toilet facilities in the Morrill Block and later made observations of this dye emanating from the defendant's sewer pipe, which the plaintiff contends established the direct discharge of offensive material into the brook. At the same time several specimens of water of the brook were taken by the plaintiff and subjected to laboratory tests which the plaintiff contends demonstrated that the defendant's waste material raised the coliform bacteria content of the brook beyond the level permitted by the statute.

The situation involving the discharge of defendant's sewage had come to the attention of the Water Improvement Commission in 1964 and on May 19, 1964, the Commission had issued an order to the Morrill Block (after identifying defendant as its owner) ordering it to discontinue the discharge of wastes into the outlet brook except those adequately treated so far as necessary to maintain the quality of the water of the outlet brook. The Morrill Block attempted an appeal from this order by entering a complaint in the Superior Court of Kennebec County (rather than following the provision for appeal to the Administrative Hearing Commission provided by 38 M.R.S.A. § 415). Its attempted appeal was dismissed in the Superior Court for want of prosecution prior to the date of this complaint, as authorized by M.R.C.P. Rule 41 (b).

On August 1, 1966, the plaintiff filed this complaint in the Superior Court. It alleged (1) that the defendant had violated the classification requirements of the outlet brook by discharging into the brook untreated waste matter including laundry and human waste from the Morrill Block resulting in an excessive concentration of coliform bacteria which violated the statutory standards and which was dangerous to aquatic life and rendered the water unfit for recreation and human consumption; and (2) that defendant had failed to comply with the Commission's order of May 19, 1964. Plaintiff asked for a preliminary and permanent injunction against the discharge of such wastes. A temporary restraining order issued.

The single Justice in the Superior Court heard the matter on defendant's motion to dismiss the restraining order and on the issuance of the temporary injunction without a jury on August 9, 1966. He dismissed defendant's motion and in his judgment found that the defendant had violated the requirements of 38 M.R.S.A. § 363, and had not complied with the court's order. He enjoined defendant from discharging untreated waste water from the laundromat and from using or permitting to be used the toilet facilities in the common passageways. The defendant appealed from this judgment. (Later the Justice suspended the injunction as to the laundromat).

We find that our consideration of this legislation and the plaintiff's efforts to apply it to the defendant's activities can go no further than the threshold of the problem.

Chapter 3 establishes four main standards for the classification of fresh surface waters stating the purpose of the Legislature that each class shall be appropriate for certain public uses and forbidding the disposal of sewage or industrial waste in such a manner as to lower the respective classifications. 38 M.R.S.A. § 363.

38 M.R.S.A. § 451, which follows, declares certain conduct to be a violation of the classification requirements and specifies the action which the Commission may take to enforce these classifications.

"After adoption of any classification by the Legislature for surface waters or tidal flats or sections thereof, it shall be unlawful for any person, corporation, municipality or other legal entity to dispose of any sewage, industrial or other waste, either alone or in conjunction with another or others, in such manner as will, after reasonable opportunity for dilution and mixture, lower the quality of any significant segment of said waters, tidal flats or sections thereof, affected by this discharge, below the minimum requirements of such classification, and notwithstanding any licenses which may have been granted or issued under sections 413 to 415.

"The commission shall enforce this section by appropriate orders, and in the event such orders are not complied with within such time as the commission shall stipulate, appropriate legal action shall be instituted by the commission to en-

force compliance or to punish violators. Any persons, corporation, municipality or other legal entity aggrieved by any such order of the commission shall have the right of appeal in similar manner as is provided for appeals under section 415. On the basis of evidence which is pertinent to the issues, the Administrative Hearing Commissioner shall enter his findings and issue his decision affirming, modifying or revoking the order of the commission."

38 M.R.S.A. § 454, which follows, authorizes the Attorney General to institute certain injunction proceedings.

"In the event of the violation of any of the provisions of this subchapter, or of any order or decision of the commission or decree of the court as the case may be, the Attorney General may institute injunction proceedings to enjoin the further violation thereof."

In 1941, the Legislature took the first of several deliberate steps in developing the Water Improvement Statute and in 1945 it made clear its intention that the authority given to the Commission was not intended to supersede the powers of the State to bring actions to abate nuisances. P.L. 1945, c. 345, § 7, which is now 38 M.R.S.A. § 372, follows:

"Nothing contained in this subchapter shall affect any litigation pending on January 1, 1945 under any other statute nor in any way impair any decrees or orders of court heretofore or hereafter entered in any proceedings so pending, nor shall the granting of any license or authority under this subchapter limit the powers of the State to initiate, prosecute and maintain actions to abate public nuisances to the extent consistent with the public interest, nor shall any license granted under this subchapter constitute a defense to any action at law for damages."

Thus, we have three methods in which the public interest may under certain conditions be protected against the pollution of our water courses—action by the Commission under Section 451, action by the Attorney General under Section 454, and the long established power of the State to abate pollution which has reached the dimensions of nuisances such as is included in 17 M.R.S.A. § 2802.

The plaintiff bases its complaint on a violation of the first paragraph of § 451. We view the second paragraph of § 451 as defining the procedure to be followed by the Commission for the enforcement of the first paragraph. An order by the Commission is a prerequisite to further action by that body. The Commission here attempted to follow the provisions of this paragraph but its order, after reciting that the defendant was the owner of the "Morrill Block", concluded as follows:

"Now therefore pursuant to the provisions of Chapter 79, Section 4, Revised Statutes of 1954, as amemded, it is hereby ordered by the Water Improvement Commission that: The *"Morrill Block"* discontinue the discharge of wastes to Crystal Lake Outlet except those that have been adequately treated and their quality improved by mechanical and/or biological or other treatment as may be necessary to maintain the quality of Crystal Lake Outlet." (Emphasis supplied)

 It appears that the "Morrill Block" is not a corporation but is merely the name commonly given to the building which defendant owns. While we feel some liberality should be exercised in the consideration of the form of the orders of the Commission, we conclude that an order which is not directed to any person or corporation is a nullity. The attempted appeal was also a nullity. It should have been made to the Administrative Hearing Commissioner as provided in 38 M.R.S.A. § 415, rather than to the Superior Court. Therefore the Commission's invalid order was

only an unsuccessful attempt to comply with the second paragraph of § 451, and the absence of a valid order prevents this action by the Commission.

■ We realize that there remain two other methods earlier referred to in which the public may be protected against water pollution but the present action does not fall under either of these procedures. We view § 454 as authorizing the Attorney General to institute injunction proceedings in his official capacity as the State's chief law enforcement officer in the event of a violation and the Commission's order is not a prerequisite to his action. However, it does not authorize injunctive action by the Commission and the complaint in the present action, although entitled "State of Maine—Water Improvement Commission", clearly identifies the Water Improvement Commission as the complainant. Furthermore, the complaint confines itself to allegations of violation of the statutory classification of the waters of the brook and does not in any way allege the creation or existence of a nuisance. We are therefore forced to conclude that the Commission was without authority to commence the present action.

■ Recognizing that matters involving enforcement of this statute may again come before us, we take this opportunity to point out that it is part of the State's duty to establish that a defendant's waste will, either alone or in conjunction with other or others, lower the quality of the water *after reasonable opportunity for dilution and mixture*, inasmuch as the record in the present case contained very little evidence tending to establish the emphasized part of the State's burden of proof.

The entry will be:

Appeal sustained. Complaint dismissed without prejudice.

TAPLEY, J., did not sit.